UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Cr. No. 22-10279-AK |
| ) | |
| 9.   QINLIANG CHEN, ) | |
|       Defendant ) | |

SENTENCING MEMORANDUM OF THE UNITED STATES

On February 26, 2024, QINLIANG CHEN ("defendant") pleaded guilty to money laundering conspiracy, in violation of Title 18, United States Code, Section 1956(h). The final version of the Pre-Sentence Report prepared by the United States Probation Office, dated November 4, 2024 ("PSR"), found that CHEN's total offense level ("TOL") was 15, his criminal history category ("CHC") was I, and his guideline sentencing range ("GSR") was 18-24 months in prison. PSR, ¶¶ 35, 39, 58.

As is discussed below, Probation did not apply a drug trafficking enhancement related to CHEN's money laundering conduct and improperly reduced his offense level by claiming he was a minor participant in the crime. The government requests that this Court sentence CHEN to 30 months in prison and three years of supervised release. This sentence is within the guideline range calculated by the government if the Court correctly applies only one of these two enhancements.

THE OFFENSE

The Money Laundering Scheme. During a two-year investigation, the Federal Bureau of Investigation (FBI) identified a significant criminal organization that laundered large sums of money for various criminal groups. Agents first detected the network in greater Boston and eventually identified the leader of the organization, JIN HUA ZHANG, based in Staten Island,

New York, and a number of his criminal associates. The investigation revealed that, for a fee, ZHANG laundered bulk cash for drug dealers and laundered profits from other illegal businesses.

In order to infiltrate ZHANG's operation, agents posed as criminal money launderers with access to cryptocurrency. ZHANG and other members of his group would pick up bulk cash or receive wire transfers from illegal business. ZHANG then arranged for agents to convert these funds into cryptocurrency. In recorded meetings, ZHANG discussed the various sources of these funds, which included profits from cocaine and marijuana trafficking as well as internet-based scams. ZHANG was charged a fee for converting the funds to cryptocurrency, and the size of the fee depended on the danger associated with the illegal funds.

The money laundering operation depicted in the superseding indictment was massive. In less than one year, ZHANG and his associates laundered at least $25 million worth of drug proceeds and funds from other illegal businesses through the FBI undercover agents. Agents traced funds from the ZHANG organization to Hong Kong and elsewhere in China, India, Cambodia, and Brazil, and seized cash and cryptocurrency in accounts tied to ZHANG. PSR, ¶¶ 10-13.

CHEN'S Role. In mid-August 2022, ZHANG texted with an undercover agent via Telegram, an encrypted messaging application, that there was approximately $120,000 in bulk cash that needed to be picked up in Orlando, Florida. On August 19, 2022, a cooperating witness who was in regular contact with ZHANG was dispatched to a grocery store parking lot in Altamonte Springs (near Orlando), Florida. There, CHEN handed the cooperating witness a bag containing $125,675 in cash. An undercover agent then converted the cash to Tether, a kind of cryptocurrency, and transmitted the cryptocurrency back to ZHANG, minus a fee.

Agents on surveillance identified CHEN in a number of ways: the minivan CHEN drove to the meet was rented by CHEN, the phone number on file with the rental car company was the

phone used by CHEN to speak to the cooperating witness, and agents identified CHEN from the video recording of the meeting between CHEN and the cooperating witness. Agents determined CHEN had an address in Rosemead, California and learned that on April 19, 2020, CHEN had attempted to pass through TSA Security at Orlando International Airport carrying $99,780 in cash.

On September 12, 2022, ZHANG sent a message to the undercover agent over Telegram that there was approximately $150,000 in bulk cash that needed to be picked up in Orlando. The undercover agent told ZHANG that an associate of his (in reality, a cooperating witness) would be in Florida and could collect the cash. After a series of calls to coordinate and schedule the meeting, on September 16, 2022, CHEN called the cooperating witness from the same number used on the August 19, 2022 money pick up. CHEN told the cooperating witness he would be driving a minivan and sent a photograph of a different rented minivan, again rented to CHEN.

At 10:46 a.m., an FBI surveillance team in Florida observed CHEN's minivan arrive in the parking lot. Agents had Altamonte Springs Police officers approach the minivan. CHEN was in the driver's seat, and a woman, later identified as his sister, was in the second row of the van behind the driver's seat. CHEN gave officers permission to search the vehicle and they recovered a black duffel bag in a storage compartment in the floor behind the front seats in the van. When asked, both CHEN and his sister denied that the bag belonged to them. CHEN said he had rented the car and had not checked the storage compartment. Inside the bag were two vacuum sealed bags of cash and one bag of banded cash, containing a total of $161,905. Officers seized the cash and issued CHEN a receipt. PSR, ¶¶ 14-18.

CALCULATING THE APPLICABLE GUIDELINE RANGE

<u>Common Ground</u>. Based on the amount of laundered money attributable to CHEN, Probation concluded CHEN's base offense level was 20. PSR, ¶ 25. Probation also assessed a two-

level increase for commission of a money laundering offense. PSR, ¶ 27. Probation also reduced CHEN's offense level by two levels because he has zero criminal history points. PSR, ¶ 32, citing USSG § 4C1.1. The government agrees that, at the very least, it is appropriate for the Court to consider whether CHEN should receive this offense level reduction.[1]

Probation Improperly Reduced CHEN's Offense Level By Eight Levels. In addition to the offense level and enhancement noted above, Probation should have applied a six-level enhancement pursuant to USSG § 2S1.1(b)(1) because the record sufficiently showed that CHEN was generally aware that the funds he dropped off were proceeds of drug trafficking. Nearly all of the defendants to have pleaded guilty in this case have either expressly stated that the bulk cash they were laundering came from drug trafficking or engaged in conduct that is commonly used in drug trafficking. Agents recorded conversations with ZHANG where he stated that some of the funds he laundered were proceeds of cocaine and marijuana trafficking. LICHENG HUANG likewise was recorded discussing the fact that the bulk cash shipments picked up by couriers to be laundered were drug profits. Agents recorded another co-defendant who, like CHEN, similarly engaged in dropping off bulk cash shipments. This was THONG NGUYEN, who expressly stated that the money came from drug trafficking, making explicit what should otherwise have been obvious. And MARIANO SANTANA, discussed below, used a code commonly employed to

---

[1] While CHEN may qualify for this reduction, "[t]he grant of authority to the district court to reduce a term of imprisonment is unambiguously discretionary," even when the guideline range is actually reduced. United States v. Vautier, 144 F.3d 756, 760 (11th Cir. 1998). A district court has "substantial discretion" in deciding whether to reduce a sentence; even "[a]n agreement between the government and the defendant that a sentence reduction is appropriate does not bind the judge; nor is the judge's consideration of the question limited to the factors the parties regard as relevant." United States v. Young, 555 F.3d 611, 614 (7th Cir. 2009). The Court could decide on the facts presented here to elect not to reduce CHEN's sentence. See United States v. Mazara-Munoz, No. 19-307-12, 2023 WL 7167114 (E.D. Pa. Oct. 31, 2023) (Court declined to reduce sentence of fentanyl trafficker in part because lower sentence would not appropriately reflect seriousness of offense).

identify criminal co-conspirators employed in numerous drug trafficking and money laundering investigations. Given this record, it is not credible for CHEN to suggest that he had no idea the funds he dropped off were drug proceeds.

The evidence developed in the investigation was more than enough to secure the application of the enhancement, which requires that the defendant knew or "believed" that the laundered funds were intended to promote drug trafficking. USSG § 2S1.1(b)(1). As is discussed below, the government is not advocating for this enhancement but notes its applicability to further demonstrate the reasonableness of its ultimate recommendation.

In addition to not applying this enhancement, Probation incorrectly concluded that CHEN was a minor participant in the offense and improperly reduced his offense level by another two levels. PSR, ¶ 29. In the PSR, Probation wrote:

> The defendant seemingly possessed limited knowledge and understanding of the conspiracy. His known involvement in the conspiracy is limited to two occasions when he delivered $125,675 (in August 2022) and $161,905 (in September 2022) to UC-2. The defendant was seemingly one of Jin Hua Zhang's trusted couriers. Thus, a two-level decrease is warranted as he was a minor participant. USSG § 3B1.2(b).

Id. Probation is wrong on the facts and the law here.

First, Probation misunderstood the evidence. CHEN is not one of "JIN HUA ZHANG's trusted couriers" (the government never suggested he was). There is virtually no chance that CHEN, living in California, traveling to Florida, knew ZHANG of Staten Island, New York. Rather, CHEN worked for a drug trafficking organization which, like all drug trafficking organizations, needed to launder the profits of its drug sales. That drug organization contracted with ZHANG to launder its money. The drug organization sent its employee (CHEN) to drop off the money to ZHANG's employee (an individual who ZHANG believed was working for him but was in fact an FBI cooperating witness) in Florida. ZHANG took a fee for laundering this drug

money. ZHANG then transmitted the bulk cash funds to individuals he believed were fellow money launderers who would, for a fee, convert the funds into cryptocurrency (but who were, in reality, FBI undercover agents). Once these funds were converted to cryptocurrency, they could be transmitted to members of the drug trafficking organization, either in the U.S. or overseas.

Probation also misapplied the law. To qualify for a minor role reduction, the defendant bears the burden of demonstrating that he is less culpable that most of those involved in the offense of conviction and that he is less culpable than most of those who have perpetuated similar crimes. United States v. Gomez-Encarnacion, 885 F.3d 52, 56-57 (1st Cir. 2018), citing United States v. Mateo-Espejo, 426 F.3d 508, 512 (1st Cir. 2005). CHEN cannot make that showing. During this investigation, CHEN traveled across the country – twice – to pick up bulk cash for a drug trafficking organization in order for that cash to be laundered. Other members of the conspiracy engaged in different types and larger amounts of money laundering, and that may expose them to harsher criminal penalties, but does not make their conduct fundamentally different than CHEN's. He engaged in money laundering acts that fall within the heartland of criminal conduct prohibited by the statute. See, e.g., United States v. Ortiz-Santiago, 211 F.3d 146, 148-149 (1st Cir. 2000) (court denied minor role where defendant performed infrequent, relatively low level tasks like unloading drugs and surveillance); United States v Gonzalez-Soberal, 109 F.3d 64, 73-74 (1st Cir. 1997) (no minor role where defendant alleged he had only been a courier); United States v. Lopez-Gil, 965 F.2d 1124, 1131 (1st Cir. 1992) (same). Moreover, two years before CHEN's arrest in this case, he was stopped at the Orlando airport with nearly $100,000 in bulk cash, conduct that is strikingly similar to that at issue here. A defendant who traveled between California and Florida to launder drug money for two years is not a "minor participant" in anything.

In sum, under Probation's guideline calculations, CHEN faces a GSR of 18-24 months.

The government suggests that a technically correct GSR would increase CHEN's total offense level by ten levels and expose CHEN to a GSR of 57-71 months in prison. Rather than advocate for that here, the government suggests that, at a minimum, CHEN's total offense level should be returned to the level included in the draft version of the PSR, which did not include the minor role reduction. This change would result in a GSR of 24-30 months.

## ARGUMENT

The government's recommendation for 30 months in prison and three years of supervised release is reasonable and consistent with the factors set forth at 18 U.S.C. § 3553(a).

First, CHEN's money laundering offense was serious. Through their conduct here, CHEN and his co-conspirators worked to transform proceeds derived from drug trafficking into funds with an apparently legal source that could be converted to cryptocurrency and transmitted overseas. This process has devastating consequences. Money laundering provides the fuel for drug dealers and other criminal groups to operate and expand their enterprises. No criminal conduct is more suffused with violence than drug trafficking, and laundering money for drug traffickers *is* being a part of a drug trafficking organization.

Second, as discussed above, CHEN's offense involved a substantial commitment of time and resources. CHEN flew across the country from California to outside Orlando, Florida – twice – to pick up bulk cash from drug dealers that used ZHANG's money laundering services. To the second deal, CHEN brought his sister, who according to the PSR also lives in California near CHEN. PSR, ¶ 44. When stopped by police, both CHEN and his sister feigned ignorance about the duffel bag in their van's storage compartment, a bag that contained vacuum-sealed bags full of cash. Additionally, in 2020, CHEN was stopped at the Orlando airport trying to get $100,000 in bulk cash through security. These unobjected-to facts in the PSR support the view that CHEN

worked for a group that trusted him enough to send him cross-country to pick up cash from far-flung drug dealers and that CHEN has made this California-to-Florida run for years.

In seeking a time-served (two month) prison sentence, CHEN strains to compare himself to co-defendant MARIANO SANTANA, who was sentenced to time served and three years of supervised release. CHEN's efforts to equate himself to SANTANA are unavailing. First, there is a question of simple math. SANTANA's actual "time served" sentence was fourteen months and two weeks long, so CHEN's suggested sentence is low even by the metrics he proposes. Second, even a cursory review of the personal history and characteristics of CHEN and SANTANA illustrates key differences between the men. According to the PSR, CHEN is a thirty-three-year-old, able-bodied man with a high school diploma and a work history, married to a gainfully employed spouse. CHEN has no "current or past medical concerns," reports "no current or past mental health history," and has not used or even experimented with controlled substances. PSR, ¶¶ 44-55. By contrast, as was noted in the government's sentencing memorandum, SANTANA was a 55-year-old man with limited formal education who had a significant history of substance abuse and mental health challenges (ECF No. 211). Unlike SANTANA, CHEN appears to have engaged in money laundering for no reason other than greed.

This makes CHEN more akin to the other co-defendants referenced above than to SANTANA. While the question is close, the government believes that Probation should have assessed CHEN an additional six-level increase in offense level because CHEN knew or believed that the money he was laundering was connected to drug trafficking. Given that the other co-defendants noted above explicitly referenced drug trafficking in the course of their money laundering activities, the government expects the guideline sentencing ranges of later-sentenced

co-defendants will reflect offense levels with that enhancement. CHEN's sentence here should be more closely aligned with these defendants' sentences to come.

## CONCLUSION

CHEN laundered large sums of money over a pronounced period of time and did so because it was an easy way to make money. The government's recommended sentence promotes general deterrence, specifically deters CHEN, and promotes respect for the law. It is a sentence that is sufficient, but not greater than necessary, to achieve the goals of sentencing. 18 U.S.C. § 3553(a).

For the reasons set out above, the government respectfully requests that this Court sentence QINLIANG CHEN to 30 months in prison and three years of supervised release.

Respectfully submitted,

JOSHUA S. LEVY
Acting United States Attorney

By: /s/ Christopher Pohl
Christopher Pohl
Brian A. Fogerty
Meghan C. Cleary
Assistant U.S. Attorneys

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on November 4, 2024.

/s/ Christopher Pohl
Christopher Pohl
Assistant U.S. Attorney